## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICHARD HAZZOURI and KIMBERLY HAZZOURI,** | : | No. 3:18cv1982 |
| **Plaintiffs** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **WEST PITTSTON BOROUGH, THE LUZERNE COUNTY OFFICE OF DEVELOPMENT; JUDY AITA; JAMES BUTERA and ELLEN QUINN, individually and in their capacity as members of the West Pittston Borough Council; and THOMAS BLASKIEWICZ, individually and in his capacity as Mayor of West Pittston Borough,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## <u>MEMORANDUM</u>

Before the court are motions to dismiss the plaintiffs' amended complaint in this due process violation case. (Docs. 21, 36, 37, 38, 39, 40). All motions have been fully briefed, and oral argument has been held. The motions are thus ripe for disposition.

## Background

Plaintiffs Richard Hazzouri and Kimberly Hazzouri owned property located in West Pittston Borough, Luzerne County, Pennsylvania, which they used as their primary residence. (Doc. 19, Am. Compl. ¶ 23). Plaintiffs' property was

substantially damaged in 2011 as a result of flooding caused by Hurricane Irene and Tropical Storm Lee. (Id. ¶ 26).

Because of the county-wide damage sustained from Hurricane Irene and Tropical Storm Lee, Luzerne County submitted a request to the United States Department of Housing and Urban Development for the release of a Community Development Block Grant Disaster Recovery to undertake a project known as the Luzerne County Flood Disaster Project (hereinafter "Project"). (Id. ¶ 17). The Project was created to acquire and demolish a number of properties in participating municipalities throughout Luzerne County in order to remove flood damaged structures. (Id. ¶ 18). West Pittston Borough was identified as a participating municipality for the Project. (Id. ¶ 19). The Luzerne County Office of Community Development (hereinafter "OCD"), which oversaw the Project, adopted a Disaster Recovery Buyout Operations Plan (hereinafter "Plan"). (Id. ¶ 13). The amended complaint does not specify when the plan was adopted, but it was evidently in 2012 or 2013.

Although the plaintiffs owned property within West Pittston Borough, the plaintiffs did not know about the Project until August 20, 2017, when they learned of its existence through friends. (Id. ¶ 38). Plaintiffs immediately contacted OCD, at which time they were informed that the Project was entering its final stage, thus the plaintiffs would have to contact West Pittston Borough for approval to

2

apply. (Id. ¶ 40).  Upon receiving approval, the plaintiffs filed their application for relief under the Project on January 30, 2018. (Id. ¶ 45).

On March 6, 2018, OCD informed the plaintiffs that because they did not apply for relief until the closing phase of the Project, it was unlikely that they would be selected for a buyout. (Id. ¶ 46).  Plaintiffs' property was assigned to a "waiting list." (Id. ¶ 48). In the meantime, the plaintiffs discovered that another buyout program existed, a mitigation grant program being administered by the Luzerne County Flood Protection Authority (hereinafter "FPA"). (Id. ¶ 51). The FPA advised the plaintiffs that it had received a number of applications for participation from residents of West Pittston Borough and that their request would also be included. (Id. ¶ 53).  On April 3, 2018, however, the FPA advised the plaintiffs that West Pittston Borough would not agree to allow the plaintiffs to participate in the FPA Program. (Id. ¶ 56).  Consequently, the plaintiffs did not obtain a buyout. (Id. ¶ 57).

Based on the foregoing allegations, plaintiffs filed the instant complaint in the Court of Common Pleas for Luzerne County claiming denial of Procedural Due Process pursuant to 42 U.S.C. § 1983, denial of Substantive Due Process pursuant to 42 U.S.C. § 1983, and denial of Equal Protection of the Law pursuant to 42 U.S.C. § 1983.  This matter was removed to this court on October 12, 2018. The defendants have each filed separate motions to dismiss.  At the request of

the plaintiff, a hearing was held on the motions on June 28, 2019, bringing this case to its present posture.

**Jurisdiction**

Because this case is brought pursuant to 42 U.S.C. § 1983, the court has jurisdiction pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

**Legal Standard**

The defendants filed their motions to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion. All well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether, " 'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.' " Colburn v. Upper Darby Twp., 838 F.2d 663, 665–66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)). The plaintiff must describe " 'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Moreover, the

4

plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation." Id. at 234–35.  In evaluating the sufficiency of a complaint the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994) (citations omitted).  The court does not have to accept legal conclusions or unwarranted factual inferences. See Curay–Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

The federal rules require only that plaintiff provide "a short and plain statement of the claim establishing that the pleader is entitled to relief," a standard which "does not require detailed factual allegations," but a plaintiff must make "a showing, rather than a blanket assertion, of entitlement to relief that rises above the speculative level." McTernan v. N.Y.C., 564 F.3d 636, 646 (3d Cir. 2009) (citations and internal quotations and quotation marks omitted).

**Discussion**

Defendants West Pittston Borough, The Luzerne County Office of Community Development, Ellen Quinn, Judy Aita, James Butera, and Thomas Blaskiewicz have each filed separate motions to dismiss.  After a review of the motions, it appears that Defendants Quinn, Aita, Butera, and Blaskiewicz

(hereinafter "individual defendants") move to dismiss the complaint on the same grounds. As such, we will begin our review with Defendant West Pittston Borough's motion and conclude our review with the issues raised by the individual defendants' motions.

## I. Defendant West Pittston Borough

We first address the motion to dismiss filed by Defendant West Pittston Borough. Initially, the plaintiffs contend that we should not even consider the merits of the Defendant West Pittston's motion because the defendant should have raised these issues in its motion to dismiss plaintiff's first amended complaint but did not. Defendant West Pittston also makes several substantive arguments in favor of dismissal. We will address these arguments in turn.

### A. Rule 12(g) Violation

On October 12, 2018, this case was removed to the Middle District of Pennsylvania. Subsequently, on October 19, 2018, Defendant West Pittston Borough filed a motion to dismiss. (Doc. 3). Instead of responding to the defendant's motion to dismiss, the plaintiffs filed an amended complaint on November 21, 2018. (Doc. 6). The defendant immediately filed a motion to dismiss the plaintiff's amended complaint as untimely. (Doc. 7). The plaintiffs then moved the court for leave to file an amended complaint on December 4,

2018. (Doc. 11).  On January 15, 2019, we issued an order granting the defendant's motion to dismiss the plaintiffs' amended complaint as untimely and also allowing the plaintiffs leave to amend. (Doc. 18).  We dismissed defendant's first motion to dismiss as moot. (Doc. 20).  In accordance with our order granting leave, the plaintiffs filed a second amended complaint on January 16, 2019. (Doc. 19).  Defendant West Pittston responded with the instant motion to dismiss. (Doc. 21).

The plaintiffs argue that we should not consider the merits of Defendant West Pittston's instant motion to dismiss because the defendant is time-barred from raising the issues under Federal Rule of Civil Procedure 12(g).  The Plaintiffs contend that the defendant should have raised the instant issues in its November 26, 2018, motion to dismiss plaintiffs' first amended complaint, as these issues were available to the defendant at that time.  Plaintiffs contend that because the defendant did not raise these arguments when they were first available, it waived the arguments.  We disagree.

Federal Rule of Civil Procedure 12(g) imposes restrictions on the filing of successive motions to dismiss.  The rule provides: Except as provided in Rule 12(h)(2) or (3), "a party that makes a motion under [Rule 12] must not make another motion under [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier motion." FED. R. CIV. P. 12(G)(2).  This rule

is " 'intended to eliminate unnecessary delay at the pleading stage' by encouraging 'the presentation of an omnibus pre-answer motion in which the defendant advances every available Rule 12 defense' simultaneously rather than 'interposing these defenses and objections in a piecemeal fashion." <u>Leyse v. Bank of America Nat. Ass'n</u>, 804 F.3d 316, 320 (3d Cir. 2015) (citing Charles Alan Wright & Arthur R. Miller, 5C Fed. Prac. & Proc. Civ. § 1384 (3d ed. 2014)).

Here, Defendant West Pittston's November 26, 2018 motion to dismiss plaintiffs' first amended complaint asked us to dismiss the amended complaint as untimely. We granted that motion. We then afforded plaintiffs an opportunity to file a second amended complaint, despite their untimeliness, which they did on January 16, 2019. It is the plaintiffs' position that, in addition to their argument regarding plaintiffs' timeliness, Defendant West Pittston should have also included the instant issues in its motion to dismiss.

While we agree with the plaintiffs that a technical reading of Rule 12(g) would prevent the defendant from raising issues that were available in the plaintiffs' first amended complaint, we find that to prevent the defendant from doing so at this point would only cause further delay in this case.[1] We agree with the defendant that preventing the defendant from bringing the instant arguments

---

[1] We note that plaintiffs' untimeliness in filing their amended complaint was the initial cause of delay in this matter.

now would inevitably lead the defendant to filing a Rule 12(g)(2)(A) motion and moving for judgment on the pleadings on the same basis pursuant to Rule 12(c). (See Garges v. People's Light & Theater, Co., No. 09-CV-2456, 2012 WL 202828 at *3-4 (E.D. Pa. Jan. 24, 2012) (holding that requiring the defendant to file a proper motion at a later time would only delay the inevitable refiling of the same arguments at a later time)).  In the interest of judicial expediency and economy, we will address the defendant's motion even though it asserts arguments for dismissal that were not stated in its previous motion to dismiss.

### B. Municipal Liability

Moving to the substance of Defendant West Pittston's motion to dismiss, we first address whether the Plaintiff has adequately alleged municipal liability pursuant to 42 U.S.C. § 1983.  Plaintiffs' complaint asserts that Defendant West Pittston Borough violated their rights to procedural and substantive due process by not informing them in a timely manner of the buyout program.  Defendant West Pittston claims that as a municipality, it cannot be held liable unless the alleged constitutional violations resulted from a custom, practice, or policy followed by West Pittston Borough.

Under the standard first articulated in Monell v. Dept. of Soc. Servs., "local governing bodies ... can be sued directly under § 1983 ... where ... the action that is alleged to be unconstitutional implements or executes a policy statement,

ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dept. of Soc. Servs. of the City of New York, 436 U.S. 658, 690 (1978).  Thus, "[a] public entity ... may be held liable for the violation of a constitutional right under 42 U.S.C. § 1983 only when the alleged unconstitutional action executes or implements policy or a decision officially adopted or promulgated by those whose acts may fairly be said to represent official policy." Reitz v. County of Bucks, 125 F.3d 139, 144 (3d Cir. 1997). Liability exists when "'there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.' " Brown v. Muhlenberg Twp., 269 F.3d 205, 214 (3d Cir. 2001) (quoting City of Canton v. Harris, 489 U.S. 378, 385 (1989)).

"Policy is made when a 'decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action' issues an official proclamation, policy, or edict." McTernan v. City of York, PA, 564 F.3d 636, 658 (3d Cir. 2009) (quoting Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990)).  "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanently and well-settled' as to virtually constitute law." Id.

After a review of plaintiffs' second amended complaint, we find that it adequately alleges that West Pittston Borough's actions against them were the

10

result of a municipal policy or custom.  Among countless other allegations in their

thirty-nine page complaint, plaintiffs allege that the moving defendant:

> [T]hrough a Policy and plan developed and implemented by Council
> and the Mayor intentionally failed to properly notify the Project's
> target audience, but rather selectively notified certain residents of the
> availability of funding under the Project. Pursuant to that Policy and
> plan, a limited number of residents, including, but not limited to, one
> or more relatives of public officials, were made aware of the existence
> of the project by the Borough while the general public intentionally
> was not notified as required by the plan. The Plaintiffs believe, and
> therefore aver, that the Policy and plan developed and implemented
> by Council and the Mayor served two improper purposes as follows:
> (i) to ensure that sufficient funding existed so that properties owned
> by the selectively notified and/or politically connected residents would
> be bought out; and (ii) to ensure there was no reduction in the
> Borough's real estate and income tax base.

(Doc. 19, Am. Compl. ¶¶ 72-74).

At this stage in the proceedings, the plaintiffs must simply allege municipal

liability.  A cursory review of plaintiffs' complaint reveals several pages of

allegations regarding the customs and policies of West Pittston Borough which,

according to the plaintiffs, resulted in constitutional violations.  As such, we find

that Defendant West Pittston Borough has adequately alleged municipal liability

and satisfied the requirements of <u>Monell</u>.

## C. Procedural Due Process

Defendant West Pittston next moves to dismiss plaintiffs' procedural due process violation claim. To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" Hill v. Borough of Kutztown, 455 F.3d 225, 233–34 (3d Cir. 2006) (quoting Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)). The plaintiffs do not claim that they were deprived of any liberty interest, therefore we focus only on whether they have alleged deprivation of a protected property interest.

The plaintiffs contend that they have a protected property interest in funds originating from the Department of Housing and Urban Development under the Disaster Relief Community Development Block Grant Program. Plaintiffs allege that these funds were distributed to the Luzerne County Flood Disaster Project through the OCD's adoption of the Disaster Recovery Buyout Operations Plan. In response, Defendant West Pittston argues that the plaintiffs have no protected property interest because the funds at issue were awarded on discretionary basis and therefore not part of an entitlement program.

"Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules...." Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972); see also Kelly v. Sayreville, N.J., 107 F.3d 1073, 1077 (3d Cir. 1997) ("State law creates the property rights protected by the Fourteenth Amendment.").  "A property interest subject to protection by the due process clause results from a 'legitimate claim of entitlement' created by an independent source such as state law." Midnight Sessions, Ltd. v. City of Phila., 945 F.2d 667 (3d Cir. 1991), overruled on other grounds by United Artists Theatre Circuit, Inc. v. Warrington, 316 F.3d 392 (3d Cir. 2003) (quoting Bd. of Regents, 408 U.S. at 577).

The Third Circuit has held "that an entitlement may exist for a benefit sought but not yet obtained if state law limits the exercise of discretion by the state official responsible for conferring the benefit." Id. at 679 (citing Winsett v. McGinnes, 617 F.2d 996, 1007 (3d Cir. 1980) (finding liberty interest in work release)).  It is important to note that absent such limitations on official discretion, the statute or regulation cannot create a property interest, as "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005).  In other words, "the applicant 'must show that particularized standards or criteria guide

the government's decisionmakers' in order to claim protection under the due process clause." <u>Baldwin v. Housing Authority of the City of Camden, New Jersey</u>, 278 F. Supp. 2d 365, 379 (D.N.J. 2003) (quoting <u>Olim v. Wakinekona</u>, 461 U.S. 238, 249 (1983)).

Instantly, the plaintiffs have alleged what they argue to be mandatory language set forth in the Plan which places particularized standards or criteria to guide official decisionmakers.  The plaintiffs contend that this language, in effect, places substantial limits on official discretion. First, plaintiffs' allege that Section 3.0 of the Plan provides that "[a]pplications **will be awarded funding** based on priorities established by Luzerne County until all funds are exhausted." (Doc. 19, Am. Compl. ¶ 32) (emphasis in Doc. 19).  Plaintiffs further point to the process for priority determination, and point out additional language in the Plan which indicates that the priorities "will be followed until funding runs out . . ." (<u>Id.</u> ¶ 33). Plaintiffs' complaint continues with various allegations regarding the standards outlined in the plan guide for the buyout project. (<u>See</u> <u>Id.</u> ¶¶ 61-63, 89-91, 102-105).

While we acknowledge the defendant's position that there may be additional language in the Plan that contradicts the above-mentioned mandatory language which may be made clearer during discovery, at this very early stage in the proceedings, we must accept plaintiffs' allegations as true and in the light

most favorable to them.  Thus, at the pleading stage, we find that the plaintiffs have sufficiently alleged a protected property interest in funds originating from the Department of Housing and Urban Development under the Disaster Relief Community Development Block Grant Program to support their procedural due process claim.

## D. Substantive Due Process

Defendant West Pittston next maintains that Count III of plaintiffs' amended complaint fails to allege a violation of plaintiffs' substantive due process rights. As noted above, the Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law...." U.S. CONST. amend. XIV.  The substantive due process clause is a "component of the [Fourteenth Amendment] that protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.' " Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992) (quoting Daniels v. Williams, 474 U.S. 327, 331 (1986)). However, "[t]he history of substantive due process counsels caution and restraint[,]" and "[e]ach new claim to [substantive due process] protection must be considered against a background of Constitutional purposes, as they have been rationally perceived and historically developed." Regents of Univ. of Mich.

15

v. Ewing, 474 U.S. 214, 229 (1985) (Powell, J., concurring) (citations and internal quotations omitted).

To establish a substantive due process claim, "'a plaintiff must prove [1] the particular interest at issue is protected by the substantive due process clause and [2] the government's deprivation of that protected interest shocks the conscious.'" Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 190 (3d Cir. 2009) (quoting Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008)).

The plaintiffs' amended complaint alleges that the conduct of West Pittston Borough Council and the Mayor violated the plaintiffs' liberty interest. As to this claim, the only issue specifically contested by the defendant is whether the plaintiffs' amended complaint sufficiently alleges conscience shocking behavior, as necessary to maintain a substantive due process claim.

The "exact degree of wrongfulness to reach the "conscious-shocking" level depends on the circumstances of a particular case." Vargas v. City of Philadelphia, 783 F.3d 962, 973 (3d Cir. 2015). Courts must look at whether "the behavior of a government officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscious." Cnty of Sacramento v. Lewis, 523 Y.S. 833, 846 (1998). The Third Circuit has suggested that corruption or self-

dealing can constitute conscious-shocking conduct. <u>See</u> <u>Eichenlaub v. Twp of</u> <u>Indiana</u>, 385 F.3d 274, 286 (3d Cir. 2004).

Here, the plaintiffs have alleged corrupt conduct by West Pittston Borough Council and the Mayor.  Specifically, the plaintiffs' amended complaint alleges that the policy and plan developed and implemented by Council and the Mayor was to ensure that sufficient funding existed so that properties owned by selectively notified and/or politically connected residents would be bought out and to ensure that there was no reduction in the Borough's real estate and income tax base. (Doc. 19, Am. Compl. ¶¶ 110-111, 113-116).

Looking solely at the allegations of the complaint and accepting them as true for the purposes of this motion, we agree that the plaintiffs have adequately alleged conscious-shocking behavior and that the defendant's motion to dismiss plaintiffs' substantive due process claim should be denied.

### E. Equal Protection

In Count IV of plaintiffs' complaint, plaintiffs allege a violation of equal protection.  Specifically, the complaint alleges that the defendant's actions, "through the improper Policy and plan developed and implemented by Council and the Mayor, treated [plaintiffs] differently from others similarly situated." (Doc. 19, Am. Compl. ¶ 120).  Plaintiffs maintain that certain residents of West Pittston Borough were made aware of the existence of the Project, but the plaintiffs were

not notified or made aware as required by the Project plan. (Id. ¶ 121). Defendant West Pittston moves to dismiss this claim, arguing that the fact that some people in West Pittston knew about the buyout program and some did not does not, on its own, meet the standard for an Equal Protection claim.

The Equal Protection Clause of the Fourteenth Amendment instructs that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.  The United States Supreme Court has recognized that the Equal Protection Clause grants every person protection from "intentional and arbitrary discrimination" by state agents. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  In Village of Willowbrook v. Olech, the Supreme Court outlined the "class-of-one" theory of equal protection, upon which the plaintiffs here base their claim.  Under a "class-of-one" claim, a plaintiff must allege that he "has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment." Id. at 564.

As noted above, the plaintiffs have alleged that the official policy and custom implemented by the Borough Council and Mayor was to ensure that certain residents, including relatives of public officials, were made aware of the existence of the Project to receive a buyout, while intentionally failing to inform and mislead the plaintiffs with respect to the availability of funding under the Project, all in furtherance of the plan and custom developed by Council and the

18

Mayor.  We agree with the plaintiffs that this alleged conduct is enough to demonstrate intentional disparate treatment.  We therefore find, for the purposes of defeating the defendant's motion to dismiss, that the plaintiffs have pled allegations of "irrational and wholly arbitrary treatment" to state a claim for relief. See Carusone v. Kane, No. 1:16-CV-1944, 2017 WL 5188291, at *5 (M.D. Pa. Nov. 9, 2017).

### F. Writ of Mandamus

Count V of plaintiff's complaint seeks a writ of mandamus.  Specifically, the plaintiff demands that West Pittston Borough buy out their property under the Project and that the Borough "join in and/or consent to any and all applications necessary for the plaintiffs' participation in the FPA Program."  Defendant West Pittston seeks dismissal of this count on the basis that the plaintiffs have an adequate remedy at law, that being they could seek compensation for the difference between the fair market value of their property and the amount that they would have received from a buyout.

To be eligible for mandamus relief, a petitioner must demonstrate (1) that he has a clear right to relief, (2) that the respondent's duty to perform the act in question is plainly defined and peremptory, and (3) that he has no other adequate remedy. See Cheney v. U.S. Dist. Court for Dist. of Columbia, 542 U.S. 367, 380-81 (2004) ("Mandamus is an extraordinary remedy, available to 'a

plaintiff only if ... the defendant owes him a clear, non-discretionary duty.' ")
(citing <u>Heckler v. Ringer</u>, 466 U.S. 602, 612 (1984)).  "The duty owed by the
government must be a legal duty which is a specific, plain ministerial act devoid
of the exercise of judgment or discretion.  An act is ministerial only when its
performance is positively commanded and so plainly prescribed as to be free
from doubt." <u>Stark v. Holder</u>, No. 11-CV-00003, 2011 WL 5593129 at *7 (M.D.
Pa. Nov. 17, 2011) (citing <u>Mallard v. United States Dist. Ct. for the Southern Dist.
of Iowa</u>, 490 U.S. 296, 309 (1989).  We note that even where the burden is met
and the technical grounds for mandamus are satisfied, the law is clear that the
court has the discretion to deny the writ. <u>Id.</u>

Here, the plaintiffs contend that the issuance of a writ of mandamus
directing the defendant to properly discharge its duties by offering a buyout of
plaintiffs' premises in accordance with the Project and/or to allow the plaintiffs to
participate in the Program is "wholly in accordance with the purpose of the writ."
(Doc. 30, Pl.'s Br. in Opp'n at 31).  As alleged by the plaintiffs, they have "the
clear right to (i) receive a 'buyout' of the premises pursuant to the Project; and/or
(ii) to participate in the FPA Program." (Doc. 19, Am. Compl. ¶ 129).  The
Project's plan provides for nondiscretionary decisions by the defendant, making
them ministerial in nature.  Finally, plaintiffs argue that the defendant has failed to
fulfill its duty in offering a buyout to the plaintiffs, despite plaintiffs' protected

property interest, thereby making the issuance of a writ "clear and undisputable." (Id.)

While the plaintiffs' allegations may satisfy the first two elements necessary for mandamus relief eligibility, we find that the plaintiffs have not met the third element: that there is no other adequate remedy available. The plaintiff has not sufficiently explained why the extraordinary remedy of mandamus relief is necessary. As pointed out by the defendant, monetary damages would be available if the plaintiff prevails in this lawsuit, and the plaintiffs can seek compensation for the difference between the fair market value of their property and the amount that they would have received from a buyout.

As such, Count V of plaintiffs' amended complaint for a writ of mandamus will be dismissed.

## II.    Defendant Luzerne County Office of Community Development

On March 18, 2019, Defendant Luzerne County Office of Community Development ("OCD") filed its motion to dismiss the claims against it based on the grounds set forth below.

### A. Due Process

#### a.  Failure to Take Advantage of Processes Available

First, Defendant OCD argues that the plaintiffs cannot adequately allege a procedural due process claim against it because the plaintiffs failed to utilize the

process available to them prior to filing suit in federal court.  According to the defendant, the Plan contemplates a dispute resolution process for applicants who believe that the determination of their eligibility status or funding award calculation was incorrect, which involves a series of appeals.  The defendant contends that plaintiffs' amended complaint fails to allege that they exhausted that appeals process available to them.

In order to state a claim for failure to provide due process, the plaintiffs must have taken advantage of the state procedural remedies that were available to them, unless those processes were patently inadequate. Alvin v. Suzuki, 227 F.3d 107, 116 (3d. Cir. 2000).  "A state 'cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them.'" Id. (citing Dusanek v. Hannon, 677 F.2d 538, 543 (7th Cir. 1982)).  It is clear that a due process violation "is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." Zinermon v. Burch, 494 U.S. 113, 126 (1990).  As noted by the defendant, if there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants. McDaniels v. Flick, 59 F.3d 446, 460 (3d Cir. 1995).

In response to the defendant's argument, the plaintiffs contend that the Plan's dispute resolution process was applicable to applicants who believed their funding award calculation or eligibility status was incorrect. The plaintiffs argue that the process was not applicable to individuals like the plaintiffs who claim that the defendants failed to follow the rules and regulations of the Plan in marketing and notifying West Pittston Borough residents of the Plan itself. Thus, the plaintiffs contend that there was no process available for them to exhaust.

After careful consideration, we agree with the plaintiffs on this issue. Section 18.0 of the Plan describes the dispute resolution process that triggers "[i]f the applicant believes that the program's determination of their funding award calculation or eligibility status is incorrect . . ." (Doc. 49, Def.'s Br. in Supp. at 6 (quoting Exh. "A" to the County's Appendix at 81)). Plaintiffs are not challenging their funding calculation or eligibility status; rather, they are challenging why they were not made aware of the plan in the first place, a challenge not contemplated by the plain language of the Plan. As such, we will deny the defendant's motion to dismiss for failure to take advantage of processes available.

### b. Municipal Liability

Like Defendant West Pittston Borough, Defendant OCD also challenges

whether the plaintiffs have adequately alleged municipal liability. Defendant OCD argues that the plaintiffs have failed to allege that an official policy of Luzerne County violated their constitutional rights. Based on the case law and analysis set forth thoroughly above, we find that the plaintiffs have, at this stage, adequately alleged municipal liability as it relates to Defendant OCD.

Specifically, as the allegations relate to Defendant OCD, plaintiffs in their amended complaint allege that the Plan set forth the policies and procedures by which the OCD must administer the Project, including but not limited to outreach strategies, citizen participation and order of priority funding. (Doc. 19, Am. Compl. ¶ 22). The complaint further alleges that Defendant OCD through its agents and employees knew that municipalities were "trying to keep the project 'hush-hush' because of the effect buyouts would have on their communities" and that despite the mandatory compliance with the Plan, the OCD awarded funding in a manner and method inconsistent with the procedures set forth by the Plan. (Id. ¶ 47). According to the plaintiffs, OCD's compliance with the Plan was not discretionary, yet it failed to comply with the procedures set forth therein. (Id. ¶¶ 81-87). At this preliminary stage, accepting these facts as true, we agree with the plaintiffs that these allegations are enough to implicate Monell liability. Additionally, we find that discovery may reasonably further reveal a specific policy followed by Defendant OCD which resulted in the violation of the plaintiffs'

24

rights.  We will deny the defendant's motion to dismiss for failure to establish
<u>Monell</u> liability.

## B. Procedural Due Process

Defendant OCD also challenges whether the plaintiffs have stated a claim
for procedural due process, once again contesting whether the plaintiffs have
demonstrated a protected property interest in the funds originating from the
Department of Housing and Urban Development under the Disaster Relief
Community Development Block Grant Program.  Because we have fully
addressed the argument above and concluded that the plaintiffs have alleged a
protected property interest in the buyout funds, we will not re-address this issue.
Defendant OCD's motion to dismiss plaintiffs' procedural due process claim on
the grounds that the plaintiffs have not alleged a protected property interest will
be denied.

## C. Writ of Mandamus

Like Defendant West Pittston Borough, Defendant OCD also argues for
dismissal of Count V, which is plaintiffs' request for a writ of mandamus
ordering the defendant to buy out their property under the Project and/or to allow
the plaintiffs to participate in the FPA Program.  Once again, we refer back to our
reasoning above for this issue.  Because we find that the plaintiffs have not

shown that there is no other adequate remedy available for them, we find that they are not entitled to mandamus relief.  We will grant Defendant OCD's motion to dismiss Count V.

### III.    Individual Defendants

Finally, we address the motions to dismiss filed by the individual defendants: Ellen Quinn, Judy Aita, James Butera, and Thomas Blaskiewicz. Defendants Quinn, Aita, and Butera are members of the West Pittston Borough Council. Defendant Blaskiewicz is the Mayor of West Pittston.  Because the substance of the motions are the same, we will address the merits together.

### A. Claims against Defendants in their Personal/Official Capacities

We first note that plaintiffs' amended complaint asserts claims against the individual defendants in both their personal and official capacities.  The individual defendants contend that the claims against them in their official capacities should be dismissed, as West Pittston Borough has already been named as a defendant and the claims are therefore duplicative.  The plaintiffs agree that so long as West Pittston Borough is a defendant, the individual defendants should be dismissed in their official capacities.  Thus, we will dismiss the individual defendants in their official capacities, and the remainder of these claims will be discussed as they relate to the individual defendants' personal capacities.

**B. Qualified Immunity**

Next, the individual defendants argue that they are protected from suit in their personal capacities by the doctrine of qualified immunity. In <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 102 (1982), the United States Supreme Court held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Id.</u> at 818. The United States Supreme Court in <u>Saucier v. Katz</u>, 533 U.S. 194, 121 (2001), subsequently established a two-part test for analyzing qualified immunity claims. <u>See</u> <u>also</u> <u>Curlev v. Klem</u>, 298 F.3d 271 (3d Cir. 2002); <u>Bennett v. Murphy</u>, 274 F.3d 133 (3d Cir. 2002). While this two-part test has since been determined to be discretionary, the Court has noted that this analysis process is often advantageous in "best facility[ing] the fair and efficient disposition of each case. <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009).

The initial inquiry in a qualified immunity examination is whether "the facts taken in the light most favorable to the plaintiff show a constitutional violation." <u>Bennett</u>, 274 F.3d at 136. The second prong requires a determination as to whether the constitutional right at issue was clearly established. <u>Id.</u> A determination that the conduct violated a clearly established constitutional right precludes the granting of qualified immunity. Here, the defendants argue that

they "are at a loss" as to "what clearly established statutory or constitutional right [they] knowingly violated." (Doc. 44, Br. in Supp. at 18).

Qualified immunity should be upheld on a 12(b)(6) motion "only when the immunity is established on the face of the complaint." Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001).  The Third Circuit has cautioned that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." Newland v. Reehorst, 328 F.App'x. 788, 791 n.3 (3d Cir. 2009).  It has likewise held that when a "complaint failed to disclose whether the defendants' actions did not violate a clearly established constitutional right, dismissal on qualified immunity grounds was premature." Debrew v. Auman, 354 F.App'x. 639, 642 (3d Cir. 2009) (citing Thomas v. Independence Twp., 463 F. 3d 285, 291 (3d Cir. 2006)).

At this time, we agree with the plaintiffs that this is one of the "vast majority of cases" in which a determination of qualified immunity is inappropriate at the pleading stage.  When viewing the facts in the plaintiffs' amended complaint in the light most favorable to the plaintiffs, the complaint does meet the bare minimum standard in alleging that the defendants violated the plaintiffs' constitutional rights by depriving them of a protected property interest.  Specifically, the complaint alleges that "[t]he actions of . . . Council and the Mayor have deprived the Plaintiffs of the benefits to which they were entitled under the

plan and the Policy." (Doc. 19, Am. Compl. ¶ 86).  We acknowledge that discovery may cast a new light on the qualified immunity analysis and whether that right was clearly established, but at this stage we find that there is no reason to necessarily believe that qualified immunity exists as a matter of law.  We will therefore deny the defendants' motion to dismiss on the grounds of qualified immunity without prejudice to the individual defendants' right to reassert the qualified immunity defense in a motion for summary judgment based on a more fully developed record.

### C. Section 1983 Claims

The plaintiffs bring the constitutional claims against the individual defendants pursuant to 42 U.S.C. § 1983.  To prevail on a § 1983 claim, the plaintiffs must show first, that they were deprived of a constitutional right and second, that the alleged deprivation was "committed by a person acting under a color of state law." Harvey v. Plains Twp. Police Dep't., 421 F.3d 185, 189 (3d. Cir. 2005).  The individual defendants contend that even accepting plaintiffs' allegations as true, selectively informing particular individuals about the buyout was not an abuse of the individual defendants' official positions.  The defendants argue that they were not acting under color of state law during the alleged constitutional violations, as it was Defendant OCD that was responsible for administering relief from the Plan.

29

A plaintiff must meet two elements to show that the defendants acted under color of state law. First, he must allege that the constitutional deprivation resulted from either: a) an exercise of a right or privilege having its source in state authority; or b) a rule of conduct imposed by the state or a person for whom the state is responsible. Lugar v. Edmonson Oil Co., 457 U.S. 922, 937 (1982). Second, he must establish the defendants "could be described in all fairness" as state actors. Brown v. Philip Morris Inc., 250 F.3d 789, 801 (3d Cir. 2001) (quoting Edmonson v. Leesville Concrete Co., 500 U.S. 614, 620 (1991)).

On this issue, we agree that the plaintiffs have pled sufficient allegations to support the proposition that the individual defendants were acting under color of state law during the alleged constitutional deprivations. The amended complaint alleges that the West Pittston Borough, "through a Policy and plan developed and implemented by Council and the Mayor, intentionally failed to properly notify the Project's target audience, but rather selectively notified certain residents of the availability of funding under the Project." (Doc. 19, Am. Compl. ¶ 72). Plaintiffs further allege that Borough residents "have been intentionally misled by Borough officials at the discretion of [the individual defendants] with respect to the availability of funding under the Project" and that the individual defendants were "motivated by the desire to maintain the current tax base." (Id. ¶¶ 75, 114).

We must, at this stage in the proceedings, view all allegations in the light most favorable to the plaintiffs, and decline the defendants' invitation to engage in an analysis of the specific responsibilities of the individual defendants which requires reviewing material outside of the pleadings. As such, we find that the plaintiffs have adequately pled that the individual defendants were acting under color of state law during the alleged constitutional violations.

**D. Procedural Due Process**

Like Defendant West Pittston Borough and Defendant OCD, the individual defendants also challenge whether the plaintiffs have stated a claim for procedural due process and argue that they do not have a protected property interest in the funds originating from the Department of Housing and Urban Development under the Disaster Relief Community Development Block Grant Program. We again rely on our above-mentioned analysis, finding that the plaintiffs have, at this stage, stated a claim for procedural due process. The individual defendants' motion to dismiss plaintiffs' procedural due process claim on the grounds that the plaintiffs have not alleged a protected property interest will be denied.

### E. Substantive Due Process

The individual defendants also move to dismiss plaintiffs' substantive due process claims against them. Once again, in the interest of brevity, we refer back to our review of the relevant case law earlier in this memorandum. After a careful review, we find that the plaintiffs have adequately pled substantive due process claims against the individual defendants.

With regard to these defendants, the plaintiffs have alleged that the policy and plan developed and implemented by the council members and the mayor was to ensure that sufficient funding existed so that properties owned by the selectively notified and/or politically connected residents would be bought out and to ensure that there was no reduction in West Pittston Borough's real estate and income tax base. (Doc. 19, Am. Compl. ¶ 109).  As we have explained above, looking solely at the allegations of the complaint and accepting them as true for the purposes of this motion, we agree that this conduct is sufficient to adequately allege conscious-shocking behavior.  As such, the individual defendants' motion to dismiss plaintiffs' substantive due process claim will be denied.

**F. Equal Protection**

Like Defendant West Pittston Borough, the individual defendants also move to dismiss plaintiffs' equal protection claim, arguing that the fact that some people in West Pittston knew about the buyout program while others did not know about the program does not, on its own, meet the standard for an equal protection claim. The defendants acknowledge that they had an obligation to inform citizens about the program but assert that because enough people knew of the project to deplete the available funds and create a waiting list, they performed their obligations despite the fact that people were not notified in the manner prescribed by the plan.

Based on our analysis above, we find that the plaintiffs' allegations that the official policy and custom implemented by the Borough Council and Mayor was to ensure that certain residents, including relatives of public officials, were made aware of the existence of the Project to receive a buyout, while intentionally failing to inform and mislead the plaintiffs with respect to the availability of funding under the Project, is enough to demonstrate intentional disparate treatment. Thus, we will deny the defendants' motion to dismiss plaintiffs' equal protection claim.

### G. Writ of Mandamus

Finally, like Defendant West Pittston Borough and Defendant OCD, the individual defendants also argue for dismissal of plaintiffs' request for a writ of mandamus ordering the defendant to buy out their property under the Project and/or to allow the plaintiffs to participate in the FPA Program. As noted above, because we find that the plaintiffs have not shown that there is no other adequate remedy available for them, we find that they are not entitled to mandamus relief. We will dismiss Count V.

## Conclusion

Accordingly, Defendant West Pittston Borough's motion to dismiss will be denied in part and granted in part. The motion will be denied as to Counts I, II, III, and IV. The motion will be granted as to Count V. Defendant OCD's motion to dismiss will be denied in part and granted in part. The motion will be denied as to Counts I and II. The motion will be granted as to Count V. Lastly, the individual defendants' motions also be denied in part and granted in part. The motions will be denied as to Counts I, II, III, and IV. The motions will be granted as to Count V. An appropriate order follows.

**BY THE COURT:**

**Date: September 10, 2019**      <u>**s/ James M. Munley**</u>
**JUDGE JAMES M. MUNLEY**
**United States District Judge**

34